# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO: 2:24-cv-1635 |
| v. ) | |
| ) | **COMPLAINT** |
| THE MANITOWOC COMPANY, INC., ) | |
| ) | |
| and ) | |
| ) | |
| GROVE U.S. L.L.C, ) | |
| ) | |
| and ) | |
| ) | |
| MANITOWOC CRANE GROUP ) | |
| GERMANY GMBH ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

The United States of America, by authority of the Attorney General and at the

request of the Administrator of the United States Environmental Protection Agency (EPA), files

this Complaint and alleges as follows:

## NATURE OF ACTION

1.    This is a civil action brought pursuant to Sections 203, 204, and 205 of the Clean Air

Act (the Act), 42 U.S.C. §§ 7522, 7523, and 7524, and the regulations promulgated pursuant to

Section 213 of the Act, 42 U.S.C. § 7547 and codified at 40 C.F.R. Parts 1037, 1039, and 1068.

This action seeks the assessment of civil penalties and injunctive relief against The Manitowoc

1

Company, Inc., Grove U.S. L.L.C, and Manitowoc Crane Group Germany GmbH (collectively "Defendants"), for violations of the Act and regulations promulgated thereunder.

2. Certification Violations: Defendants manufactured and illegally imported, sold, offered for sale, and/or introduced or delivered for introduction into United States commerce mobile cranes utilizing more than one thousand engines that were neither covered by the certificates of conformity required under Sections 203(a)(1) and 213(d) of the Act, 42 U.S.C. §§ 7522(a)(1) and 7547(d), and 40 C.F.R. § 1068.101, nor exempt from that certification requirement. These certification violations involved 59 uncertified "motor vehicle" truck cranes that were subject to greenhouse gas (GHG) certification requirements applicable to on-highway vehicles, 392 uncertified "nonroad" truck cranes that were equipped with motor vehicle engines lacking the required nonroad certifications, three uncertified cranes containing nonroad compression-ignition engines that were authorized for export only, and over five hundred additional uncertified nonroad compression-ignition engines that were disqualified from or in excess of Defendants' allowance under EPA's Transition Program for Equipment Manufacturers (TPEM) regulations.

3. Reporting Violations: Defendants failed to meet annual reporting requirements for four reports (reporting years 2014-2017) under the TPEM regulations, and failed to complete at least 560 accurate import declaration forms required under 40 C.F.R. § 1068.301(d), in violation of Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2) and 40 C.F.R. § 1068.101.

4. Labeling Violations: Defendants manufactured and illegally imported, sold, offered for sale, and/or introduced or delivered for introduction into United States commerce 53 mobile cranes that lacked fuel inlet labels required under 40 C.F.R. § 1039.135(e), and four mobile

2

cranes that lacked military-exempt labels required under 40 C.F.R. § 1068.225(e), in violation of Section 203(a)(4) of the Act, 42 U.S.C. § 7522(a)(4) and 40 C.F.R. § 1068.101.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 204, 205, and 213(d) of the Act, 42 U.S.C. §§ 7523, 7524, and 7547(d).

6.     This Court has personal jurisdiction over Defendants as they transact business in the State of Wisconsin and many of the alleged violations occurred in or relate to Defendants' business transactions in this District, and because exercise of jurisdiction over Defendants is consistent with due process. In addition, Manitowoc Crane Group Germany GmbH is subject to the jurisdiction of the courts of the United States for this action pursuant to its voluntary participation in the TPEM pursuant to 40 C.F.R. § 1039.626(a).

7.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395 and Section 205 of the Act, 42 U.S.C. § 7524, because Defendants transact business in this District and because The Manitowoc Company, Inc. is headquartered in this District.

## DEFENDANTS

8.     The Manitowoc Company, Inc., is a publicly-traded crane and lifting equipment manufacturer and importer incorporated under the laws of the State of Wisconsin and headquartered in Milwaukee, Wisconsin.

9.     The Manitowoc Company, Inc., is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

10.   The Manitowoc Company, Inc., is a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1).

3

11. At all times relevant to this action, The Manitowoc Company, Inc., was engaged in the business of manufacturing crane and lifting equipment powered by compression-ignition engines that it imported, offered for sale, sold, and/or introduced or delivered for introduction into United States commerce.

12. Manitowoc Cranes, L.L.C. was a former subsidiary of The Manitowoc Company, Inc., which was registered under the laws of the State of Wisconsin with a principal place of business in Manitowoc, WI. At times relevant to this action, Manitowoc Cranes, L.L.C. was engaged in the business of manufacturing, importing, offering for sale, selling, and/or introducing or delivering for introduction into United States commerce crane and lifting equipment powered by compression-ignition engines. Manitowoc Cranes, L.L.C has since merged into Grove U.S. L.L.C.

13. Grove U.S. L.L.C. (Grove) is registered under the laws of the State of Delaware, and has its principal place of business in Shady Grove, PA.

14. Grove is a subsidiary of The Manitowoc Company, Inc.

15. Grove is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

16. Grove is a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1).

17. At all times relevant to this action, Grove was engaged in the business of manufacturing, importing, offering for sale, selling, and/or introducing or delivering for introduction into United States commerce crane and lifting equipment powered by compression-ignition engines.

4

18. Manitowoc Crane Group Germany GmbH is a company incorporated under the laws of Germany and is a wholly-owned, indirect subsidiary of The Manitowoc Company, Inc.

19. Manitowoc Crane Group Germany GmbH is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

20. Manitowoc Crane Group Germany GmbH is a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1).

21. At all times relevant to this action, Manitowoc Crane Group Germany GmbH was engaged in the business of manufacturing crane and lifting equipment powered by compression-ignition engines that were imported, offered for sale, sold, and/or introduced or delivered for introduction into commerce through Grove U.S. L.L.C.

## STATUTORY AND REGULATORY BACKGROUND

22. In enacting the Clean Air Act, Congress found that "the growth in the amount and complexity of air pollution . . . has resulted in mounting dangers to the public health and welfare . . . ." 42 U.S.C. § 7401(a)(2).

23. Through the Act, Congress intended "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population[.]" 42 U.S.C. § 7401(b)(1).

24. This action arises under Title II of the Act, as amended, 42 U.S.C. § 7521, *et seq*., and the regulations promulgated thereunder relating to exhaust emission standards for mobile sources of air pollution.

25. Title II of the Act, captioned "Emission Standards for Moving Sources," requires EPA to prescribe and revise standards for air pollutant emissions from any class or classes of "new motor vehicles or new motor vehicle engines" and certain "nonroad engines and nonroad

5

vehicles," that in EPA's judgment causes or contributes to air pollution which may reasonably be anticipated to endanger public health or welfare. 42 U.S.C. §§ 7521(a)(1), 7547(a).

26. Pursuant to Section 213(d) of the Act, 42 U.S.C. § 7547(d), emission standards for nonroad engines and nonroad vehicles shall be enforced in the same manner as enforcement of emission standards for new motor vehicles or new motor vehicle engines under Section 202 of the Act, 42 U.S.C. § 7521.

27. EPA has promulgated regulations regarding requirements and prohibitions for the manufacture and introduction into United States commerce of nonroad engines, and vehicles and equipment using such engines, at 40 C.F.R. Parts 1039 (Control of Emissions from New and In-use Nonroad Compression-Ignition Engines) and 1068 (General Compliance Provisions for Highway, Stationary, and Nonroad Programs).

28. EPA has promulgated regulations applicable to the emission of six GHGs (carbon dioxide, nitrous oxide, methane, hydrofluorocarbons, perfluorocarbons, and sulfur hexafluoride) from certain heavy-duty motor vehicles at 40 C.F.R. Part 1037 (Control of Emissions from New Heavy-Duty Motor Vehicles).

### *Certificates of Conformity*

29. Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), prohibits manufacturers of motor vehicles and nonroad vehicles using internal combustion engines from selling, offering for sale, introducing or delivering for introduction into United States commerce, or (in the case of any person) importing into the United States (or causing any of the foregoing with respect to) any such vehicles unless the engine contained therein is covered by a certificate of conformity issued by EPA under regulations prescribed by the Act. *See* 42 U.S.C. § 7547(d) (making

6

standards applicable to nonroad engines and vehicles enforceable in the same manner as Section 203 of the Act), *see also id.* § 7550 (defining "motor vehicle" and "nonroad vehicle").

30. The certification process allows EPA to ensure that every covered engine introduced into United States commerce satisfies applicable emission standards.

31. Nonroad certificates of conformity: To obtain a certificate of conformity covering nonroad compression-ignition engines, an engine manufacturer must submit an application for a certificate of conformity to EPA for each nonroad engine family, as determined under 40 C.F.R. § 1039.230, and every model year that it intends to manufacture, sell, offer for sale, introduce, or deliver for introduction into United States commerce, or import into the United States. The certificate of conformity application must include, among other things, identification of the covered engine family, a description of the nonroad engines and their emission control system, and test results from a test engine or engines showing that the engine family satisfies applicable emissions standards. 40 C.F.R. §§ 1039.201, 1039.205. If, after review of the certificate of conformity application and other information, EPA determines that the test engine or engines described in the certificate of conformity application meet(s) the requirements of the Act, EPA will issue a certificate of conformity for the nonroad engine family for that model year. 40 C.F.R. § 1039.255.

32. Heavy-duty motor vehicle certificates of conformity for GHGs: To obtain a certificate of conformity covering GHG emissions from heavy-duty motor vehicles, a vehicle manufacturer must submit an application for a certificate of conformity to EPA for each vehicle family and every model year that it intends to manufacture, sell, offer for sale, introduce, or deliver for introduction into United States commerce, or import into the United States. The certificate of conformity application must include, among other things, identification of the

7

covered vehicle family, a description of the vehicle family's specifications and emission control system, and applicable test and modeling results. 40 C.F.R. §§ 1037.201, 1037.205. If, after review of the certificate of conformity application and other information, EPA determines that the vehicle family described in the certificate of conformity application meet(s) the requirements of the Act, EPA will issue a certificate of conformity for the vehicle family for that model year. 40 C.F.R. § 1037.255.

33. The general compliance provisions of 40 C.F.R. Part 1068 apply to heavy-duty motor vehicles regulated under 40 C.F.R. Part 1037, and to land-based nonroad compression-ignition engines regulated under 40 C.F.R. Part 1039. *See* 40 C.F.R. §§ 1037.15(b), 1037.601, 1039.15(b), & 1068.1(a).

34. Pursuant to 40 C.F.R. Part 1068, manufacturers of heavy-duty motor vehicles and nonroad vehicles or equipment must "not sell, offer for sale, or introduce or deliver into commerce in the United States or import into the United States any new engine/equipment after emission standards take effect for the engine/equipment, unless it is covered by a valid certificate of conformity for its model year and has the required label or tag." 40 C.F.R. § 1068.101(a)(1). Such manufacturers also "must not take any such actions with respect to any equipment containing an engine subject to [Part 1068's] provisions unless the engine is covered by a valid certificate of conformity for its model year and has the required engine label or tag." *Id*. A valid certificate of conformity is one that applies to the same model year as the model year of the equipment (except as allowed by 40 C.F.R. § 1068.105(a)). 40 C.F.R. § 1068.101(a)(1)(i).

35. For purposes of Title II of the Act, "[t]he term 'manufacturer' as used in sections 7521, 7522, 7525, 7541, and 7542 of this title means any person engaged in the manufacturing or assembling of new motor vehicles, new motor vehicle engines, new nonroad vehicles or new

8

nonroad engines, or importing such vehicles or engines for resale, or who acts for and is under the control of any such person in connection with the distribution of new motor vehicles, new motor vehicle engines, new nonroad vehicles or new nonroad engines, but shall not include any dealer with respect to new motor vehicles, new motor vehicle engines, new nonroad vehicles or new nonroad engines received by him in commerce." 42 U.S.C. § 7550(1). The regulations at 40 C.F.R. § 1068.30 state that "*Manufacturer* has the meaning given in section 216(1) of the Clean Air Act (42 U.S.C. 7550(1)). In general, this term includes any person who manufactures or assembles an engine or piece of equipment for sale in the United States or otherwise introduces a new engine or piece of equipment into U.S. commerce. This includes importers that import new engines or new equipment into the United States for resale."

### *GHG Requirements for Heavy Duty Motor Vehicles*

36. EPA has promulgated emissions standards for GHG emissions from new heavy-duty motor vehicles. 40 C.F.R. Part 1037. These regulations apply to all new heavy duty vehicles, subject to certain exceptions, including an exclusion for vehicles that do not meet the definition of "motor vehicle." *See* 40 C.F.R. §§ 1037.1, 1037.5(a). For purposes of this exclusion, a vehicle is not considered a "motor vehicle" if one or more of the following criteria are met: (1) the vehicle cannot exceed a maximum speed of 25 miles per hour over level, paved surfaces, (2) the vehicle lacks features customarily associated with safe and practical street or highway use, such as a reverse gear, a differential, or required safety features, or (3) the vehicle exhibits features which render its use on a street or highway unsafe, impractical, or highly unlikely, such as tracks,

9

an inordinate size, or features associated with military combat or tactical vehicles. 40 C.F.R. § 85.1703(a); *see id*. § 1037.801 (defining "motor vehicle by reference to 40 C.F.R. § 85.1703).

37.   EPA has also promulgated certain exemptions from the GHG standards otherwise applicable to new heavy-duty vehicles, including an exemption for certain vocational vehicles that are intended to be used extensively in off-road environments such as construction sites. 40 C.F.R. § 1037.631. To be exempt from heavy-duty motor vehicle GHG standards, such vocational vehicles must be designed to work inherently in an off-road environment or designed to operate at low speeds unsuitable for highway operation, and must also meet one of the following criteria: (1) have an axle that has a gross axle weight rating at or above 29,000 pounds, (2) have a speed attainable in two miles of not more than 33 miles per hour, (3) have a speed attainable in two miles of not more than 45 miles per hour, an unloaded vehicle weight that is not less than 95 percent of its gross vehicle weight rating, and no capacity to carry occupants other than the driver and operating crew, or (4) have a maximum speed at or below 54 miles per hour. 40 C.F.R. § 1037.631(a).

### *Use of Certain "Motor Vehicle" Engines in Nonroad Equipment*

38.   EPA has promulgated special compliance provisions that allow nonroad equipment manufacturers to use certified on-highway motor vehicle engines in their nonroad equipment without requiring a separate nonroad certification, as long as certain requirements are met. 40 C.F.R. § 1039.605(b)-(d).

39.   For a motor vehicle engine to be eligible for use in nonroad equipment under these provisions, the motor vehicle engine must already be covered by a certificate of conformity issued under 40 C.F.R. Part 86, and may not be changed in any way that could reasonably be expected to increase its emissions. *Id*. § 1039.605(d)(1), (2). In addition, the equipment

10

manufacturer must comply with additional reporting, labeling, and notification requirements. *Id.* § 1039.605(d)(3)-(8).

40.   If these requirements are all met, EPA will consider the motor vehicle engine certification issued under 40 C.F.R. Part 86 to also be valid for nonroad purposes under 40 C.F.R. Part 1039. However, failure to comply with these requirements renders the motor vehicle engine subject to the nonroad standards, requirements, and prohibitions of 40 C.F.R. Part 1039, and introducing such an engine into commerce without a valid exemption or nonroad certificate of conformity issued under 40 C.F.R. Part 1039 violates the prohibitions of 40 C.F.R. § 1068.101(a)(1). *See* 40 C.F.R. § 1039.605(e).

### *Exemption for Certain Exports of Engines and Equipment*

41.   EPA regulations set forth at 40 C.F.R. § 1068.230 exempt from the Act's certification requirements certain engines and equipment that are exported to another country. Such engines/equipment must be permanently labeled that they are for export only. 40 C.F.R. § 1068.230(a)(4), (c), (d). The exemption from normal certification requirements will be rendered void if such engines or equipment are subsequently sold or offered for sale to an ultimate purchaser in the United States. 40 C.F.R. § 1068.230(a)(5), (b).

### *The Tier 4 Emissions Standards for Nonroad Engines*

42.   EPA has promulgated, and from time to time revised, emissions standards for nonroad compression-ignition engines. *See* 40 C.F.R. Parts 89 and 1039. These standards are referred to with a "Tier" designation.

43.   In 2004, EPA adopted more stringent emission standards intended for use in nonroad equipment using compression-ignition engines ("Tier 4 standards") and sulfur reductions in noroad diesel fuel, to achieve significant reductions in particulate matter, nitrogen oxides, and

11

sulfur oxides. To meet Tier 4 standards, equipment manufacturers generally must modify their equipment designs to accommodate engines with additional and improved emissions control devices. *See* 69 Fed. Reg. 38,958 (June 29, 2004) (codified at 40 C.F.R. Part 1039); *see also* 40 C.F.R. §§ 1039.101, 1068.101(a)(1).

44.   Tier 4 standards were set in two phases, Tier 4i (interim) and Tier 4f (final), the timing of which is governed by the size of the engine output, as measured in kilowatts (kW) of power. As relevant here, Tier 4i became effective for engines with power greater than or equal to 130 kW and less than or equal to 560 kW on January 1, 2011, and Tier 4f became effective for such engines on January 1, 2014. 40 C.F.R. § 1039.102, Table 6.

### *The Transition Program for Nonroad Equipment Manufacturers*

45.   EPA adopted transition provisions for nonroad equipment manufacturers to provide flexibility for these manufacturers to selectively delay compliance with the Tier 4 standards for a limited number of units for up to seven years, subject to certain requirements. This Transition Program for Equipment Manufacturers is known as the TPEM. 40 C.F.R. § 1039.625.

46.   Under the TPEM, nonroad equipment manufacturers are allowed to produce and introduce into commerce in the United States a limited number of nonroad vehicles utilizing engines that have not been certified to the applicable Tier 4 emissions standards only if they comply with all TPEM requirements of 40 C.F.R. § 1039.625. Thus, under the TPEM, equipment manufacturers may, subject to requirements, continue to introduce into United States commerce vehicles containing a limited number of "exempt" engines that are uncertified to Tier 4 standards.

47.   Equipment manufacturers may qualify for exemptions under the TPEM based either on a percentage of their production allowance or a maximum number of exempted pieces of

12

equipment (small volume allowance), and they may choose either option for a particular power category. 40 C.F.R. § 1039.625(b)(1)-(2).

48. Under the percent-of-production allowance, an equipment manufacturer is permitted to produce and introduce into commerce vehicles with exempted engines up to a limit which is based on the percentage of total sales within a power category relative to its total U.S.-directed production volume. Under the percent-of-production allowance, the sum of these annual percentages within a power category during the seven-year period may not exceed 80 percent. 40 C.F.R. § 1039.625(b)(1).

49. The limit on TPEM-exempted engines ("TPEM allowance") for a power category applies to all U.S.-directed sales of an equipment manufacturer, including those from any parent or subsidiary companies and any other companies the manufacturer licenses to produce equipment for it. 40 C.F.R. § 1039.625(a). Thus, when determining an equipment manufacturer's TPEM allowance, a parent and its subsidiary companies, as defined at 40 C.F.R. § 1068.30, and licensed companies share one set of allowances among them for U.S.-directed sales.

50. Before an equipment manufacturer utilizing engines not certified to Tier 4 standards may begin using the TPEM exemption, it must notify EPA of its intent to do so and provide information about its intended use of the TPEM exemptions, including an estimate of the number of engines in each power category it plans to produce and whether it intends to use the percent-of-production or small volume allowance approach to determine its TPEM allowance. 40 C.F.R. § 1039.625(g).

51. To be eligible to use the TPEM allowances, the equipment manufacturer must follow all of the requirements of 40 C.F.R. §§ 1039.625 and 1039.626. An engine or piece of equipment that is purportedly exempt from the Act's certification requirement under the TPEM is not in fact

13

exempt if the engine or equipment manufacturer fails to comply with the detailed TPEM requirements. 40 C.F.R. § 1039.625.

52. Once the equipment manufacturer has used up its TPEM allowance, any additional vehicles that it sells, offers for sale, introduces, or delivers into United States commerce that contain engines not certified to currently applicable Tier 4 standards violate the prohibition of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1) and 40 C.F.R. §§ 1068.101(a)(1) and 1039.625(i).

### *Normal Existing Inventory and Stockpiling*

53. Even after the Tier 4 standards are effective, equipment manufacturers may continue to use up "normal inventories" of engines that were built before the new standards became effective. 40 C.F.R. §§ 1068.101(a), 1068.105(a).

54. Specifically, 40 C.F.R. § 1068.105(a) provides that if a new emission standard applies in a given model year, equipment produced in that year or later must have engines that are certified to the new standard, except that the equipment manufacturer may "continue to use up normal inventories" of engines built before the date of the new standard. Normal inventory applies for engines in the manufacturer's possession or from an engine supplier's normal inventory, where such inventory is consistent with the equipment manufacturer's "normal inventory practice" and "normal inventory requirements." *Id.* Further, equipment manufacturers are specifically prohibited from circumventing the certification requirement for Tier 4 engines by "stockpiling" engines that were built before Tier 4 standards became applicable. *Id.*; *see* also *id.* §§ 1068.101(a), 1068.103.

55. Normal inventories of engines under 40 C.F.R. § 1068.105(a) are considered compliant engines (even though they may not be certified to current emission standards in effect)

14

and are not included in the equipment manufacturer's TPEM allowances. 40 C.F.R.

§ 1039.625(d)(1).

56.   Equipment manufacturers who, after the effective date of the Tier 4 standards, introduce into United States commerce vehicles containing engines not certified to the Tier 4 standards and not part of the manufacturers' normal inventory are liable for violations of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. § 1068.101(a), unless the vehicles are within the TPEM exemption.

### *TPEM Importation Bond Posting Requirement*

57.   Equipment manufacturers seeking to use the TPEM provisions of 40 C.F.R.

§ 1039.625 for vehicles manufactured outside of the United States for introduction into United States commerce must meet additional criteria found at 40 C.F.R. § 1039.626 to be eligible for TPEM allowances. Among these criteria, an equipment manufacturer must post a specified import bond to cover any potential enforcement actions under the CAA before it or anyone else imports its equipment under the TPEM. 40 C.F.R. § 1039.626(a)(9).

58.   Failure to post a bond for imported equipment in compliance with 40 C.F.R.

§ 1039.626(a)(9) disqualifies the unbonded equipment from the TPEM allowance. 40 C.F.R.

§§ 1039.625, 1039.626.

### *Annual TPEM Reporting Requirements*

59.   Section 213(d) of the Act, 42 U.S.C. § 7547(d), states that standards established for nonroad engines and vehicles are subject to, *inter alia*, the provisions of Section 208 of the Act, 42 U.S.C. § 7542. Section 208(a), 42 U.S.C. § 7542(a) requires, *inter alia*, that persons subject to Part A of Title II of the Act (including Sections 203 and 213 of the Act, 42 U.S.C. §§ 7522 and 7547) establish and maintain records, perform certain testing, and make reports and provide

15

information that the EPA may reasonably require to determine whether such persons have acted or are acting in compliance with the Act.

60.  Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A), prohibits any person from failing or refusing to permit access to or copying of records or failing to make reports or provide information required under Section 208 of the Act, 42 U.S.C. § 7542. The EPA's implementing regulations provide that engine and equipment manufacturers must give the EPA "complete and accurate reports and information without delay." 40 C.F.R. § 1068.101(a)(2).

61.  The TPEM regulations require an equipment manufacturer (including a parent and its subsidiaries) using TPEM allowances to submit to the EPA an annual report to verify that the manufacturer is not exceeding any annual or total TPEM allowance. 40 C.F.R. § 1039.625(g)(2). The annual report must be submitted by March 31 of the year following a year a manufacturer used TPEM allowances, and the report must identify: (i) the total count of units the manufacturer sold in the preceding year for each power category based on actual U.S.-directed production information; and (ii) the percentages of U.S.-directed production that correspond to the number of units in each power category and the cumulative numbers and percentages of units for all the units that the manufacturer has sold pursuant to TPEM for each power category. *Id*.

### *Import Reporting Requirements*

62.  Importers of equipment containing engines subject to EPA emission standards are required to complete the appropriate EPA declaration form before importing any engines or equipment into the United States. 40 C.F.R. § 1068.301(d). The EPA has created Declaration Form 3520-21 for this purpose. Importers are required to complete (and retain a copy of) the declaration form before importing equipment containing the covered engines. In addition to

16

requisite information regarding the engines being imported, Declaration Form 3520-21 directs importers to indicate on the form whether the engine is subject to exemption under the TPEM.

63. An importer's failure to comply with Declaration Form 3520-21 requirements for imported vehicles with regulated engines is a violation of Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A), and 40 C.F.R. § 1068.101(a)(2).

### *Equipment Labeling Requirements*

64. Section 213(d) of the Act, 42 U.S.C. § 7547(d), states that standards established for nonroad engines and vehicles are subject to, *inter alia*, the provisions of Section 207 of the Act, 42 U.S.C. § 7541. Section 207(c)(3)(C) requires manufacturers of engines and vehicles to permanently affix to each engine and vehicle a label or tag indicating such engine or vehicle is covered by a certificate of conformity as well as provide any other information prescribed by regulation.

65. Section 203(a)(4)(A) of the Act, 42 U.S.C. § 7522(a)(4)(A), and EPA regulations at 40 C.F.R. § 1068.101(a)(1), prohibit any manufacturer of a new engine or vehicle to sell such engine or vehicle unless a label or tag is permanently affixed to such engine and vehicle in accordance with Section 207(c)(3)(C) of the Act, 42 U.S.C. § 7541(c)(3)(C).

66. TPEM Labels: The TPEM regulations at 40 C.F.R. § 1039.625 further require equipment manufacturers to label each piece of equipment produced using a TPEM engine with specified information that supplements the engine emission control label or tag. 40 C.F.R. § 1039.625(f). The label must be permanently affixed (attached in such a manner that it cannot be removed without destroying or defacing it in accordance with 40 C.F.R. § 1068.45(a)) and, in addition to other information, state that "This equipment has an engine that meets U.S. EPA emission standards under 40 C.F.R. § 1039.625."

17

67. Equipment that is not permanently labeled in accordance with the TPEM labeling requirements of 40 C.F.R. § 1039.625(f), is not eligible for exemption under the TPEM. 40 C.F.R. § 1039.625.

68. <u>Fuel Inlet Labels</u>: EPA regulations require that the fuel inlet on equipment containing 2011 and later nonroad engines must be permanently labeled "Ultra Low Sulfur Fuel Only." 40 C.F.R. § 1039.135(e). This labeling requirement applies to all new, nonroad engines starting with model year 2011 for engines with power between 130 and 560 kW. 40 C.F.R. § 1039.1, Table 1; *see also* 40 C.F.R. § 1039.104(e) ("For diesel-fueled engines in 2011 and later model years, the diesel test fuel is ultra low-sulfur diesel fuel specified in 40 CFR part 1065"); 69 Fed. Reg. 38,959, 39,037 (June 29, 2004) ("In general, beginning in model year 2011, nonroad engines will be required to use the Ultra Low Sulfur diesel fuel … Thus, the default label will state "ULTRA LOW SULFUR FUEL ONLY.")

69. <u>Military Exempt Labels</u>: EPA regulations exempt certain engines and equipment from emissions standards if they will be owned by an agency of the federal government responsible for national defense and meet certain criteria. 40 C.F.R. § 1068.225. Manufacturers of such engines and equipment must add a permanent label that, in addition to other information, states that "This [engine, equipment, vehicle, etc.] has an exemption for national security under 40 C.F.R. § 1068.225."

### *Enforcement Mechanisms*

70. The United States Department of Justice has authority to bring this action on behalf of the EPA Administrator under 28 U.S.C. §§ 516 and 519, Sections 204(b), 205(b), and 305(a) of the Act, 42 U.S.C. §§ 7523(b), 7524(b) and 7605(a), and under 40 C.F.R. § 1068.125.

71. Section 213(d) of the Act, 42 U.S.C. § 7547(d), provides that regulations applicable to nonroad engines shall be enforced in the same manner as the standards for new motor vehicles and new motor vehicle engines. The standards for new motor vehicles and new motor vehicle engines (and hence, nonroad equipment and engines) are enforced pursuant to Sections 203 (Prohibited Acts), 204 (Actions to Restrain Violations), and 205 (Civil Penalties), 42 U.S.C. §§ 7522, 7523, and 7524.

72. Section 204(b) of the Act, 42 U.S.C. § 7523(b), authorizes the United States to bring a civil action to restrain violations of Section 203(a) of the Act, 42 U.S.C. § 7522(a). The regulations at 40 C.F.R. § 1068.125 authorize a civil action to enjoin and restrain violations of 40 C.F.R. § 1068.101.

73. Section 205(b) of the Act, 42 U.S.C. § 7524(b), authorizes the EPA Administrator to bring a civil action to assess and recover civil penalties for violations of Section 203(a) of the Act, 42 U.S.C. § 7522(a). The regulations at 40 C.F.R. §§ 1068.101(a) and 1068.125 authorize a civil action to assess and recover civil penalties for violations of 40 C.F.R. § 1068.101.

74. Section 205(a) of the Act, 42 U.S.C. § 7524(a), authorizes civil penalties of up to $25,000 per vehicle or engine for each violation of Section 203(a)(1) or (a)(4) of the Act, 42 U.S.C. § 7522(a)(1), (a)(4), and civil penalties of up to $25,000 per day of violation for each violation of Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2). *See also* 40 C.F.R. § 1068.101.

75. The Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101–410, 104 Stat. 890 (codified as amended at 28 U.S.C. § 2461 note), requires EPA to periodically adjust civil penalties for inflation. Pursuant to this authority, EPA increased the amount of civil penalties to $37,500 per engine or per day for each violation under Section 205(a) of the Act, 42 U.S.C. § 7524(a), occurring on and after January 13, 2009 through November 2, 2015, and up to

19

$57,617 per engine or per day for each violation occurring after November 2, 2015 and assessed on or after December 27, 2023. 40 C.F.R. §§ 19.4; 88 Fed. Reg. 89,309 (Dec. 27, 2023).

## GENERAL ALLEGATIONS

### *Certification Violations*

76. <u>59 Uncertified TMS500-2 Motor Vehicle Cranes</u>: Grove manufactured and then sold, offered for sale, and/or introduced into commerce in the United States 59 model TMS500-2 truck cranes that were "motor vehicles" subject to the GHG certification requirements of 40 C.F.R. Part 1037, but which did not meet such requirements.

77. These 59 model TMS500-2 truck cranes are "motor vehicles" pursuant to 40 C.F.R. § 85.1703, and did not qualify for an exemption from GHG certification requirements for off-road vocational vehicles, because the cranes did not meet the weight or speed criteria set forth in 40 C.F.R. § 1037.631(a).

78. Beginning in approximately June 2019, Grove sold, offered for sale, and/or introduced into commerce in the United States each of these uncertified motor vehicles in violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. §§ 1037.601(a)(1) and 1068.101(a)(1).

79. <u>392 Uncertified Nonroad Truck Cranes with Motor Vehicle Engines</u>: Grove manufactured and then sold, offered for sale, and/or introduced into commerce in the United States 392 nonroad truck cranes (models TMS700E, TMS800E, TMS9000-2, and TMS9000E), that had been equipped with heavy-duty on-highway motor vehicle engines, but for which Grove had not complied with the requirements set forth at 40 C.F.R. § 1039.605(b)-(d) for using such motor vehicle engines in nonroad cranes.

20

80. Grove's failure to comply with the requirements of 40 C.F.R. § 1039.605(d) meant that the engines installed in these 392 nonroad truck cranes required nonroad certifications pursuant to 40 C.F.R. § 1039.605(e).

81. Beginning in approximately January 2014, Grove sold, offered for sale, and/or introduced into commerce in the United States each of these uncertified truck cranes in violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. § 1068.101(a)(1).

82. Three Cranes Containing Uncertified Tier 3 Export-Only Engines: Grove (then doing business as Manitowoc Cranes, L.L.C.) manufactured and then sold, offered for sale, and/or introduced into commerce in the United States three nonroad truck cranes (models 14000 and MLC165) containing Tier 3 engines labeled for export only pursuant to 40 C.F.R. § 1068.230.

83. The sale of each crane to an ultimate purchaser in the United States rendered void the exemption from normal certification requirements for export-only equipment provided by 40 C.F.R. § 1068.230.

84. From approximately July 2015 through May 2017, Grove sold, offered for sale, and/or introduced into commerce in the United States each of these uncertified truck cranes in violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. § 1068.101(a)(1).

85. At least 498 Uncertified Non-Tier 4f/Stockpiled Engines: From January 1, 2014 through December 31, 2017, Defendants manufactured, imported, sold, offered for sale, and/or introduced into commerce in the United States cranes containing at least 498 nonroad compression-ignition engines with power between 130 and 560 kW that were not compliant with Tier 4f emission standards and were not labeled as TPEM exempt.

21

86. The engines Defendants installed in most of these cranes were purchased shortly in advance of the date of the change to EPA's Tier 4f emission standards (i.e., January 1, 2014). Defendants purchased and stockpiled these non-Tier 4f engines in advance of the January 1, 2014 change in emission standards, in order to manufacture, import, offer for sale, sell, and/or introduce into commerce in the United States, equipment containing those engines while circumventing the more stringent emissions standards.

87. Each of these engines was neither covered by an EPA-issued certificate of conformity valid for the applicable model year, nor otherwise exempt from the Act's certification requirement.

88. From approximately January 2014 through December 2017, Defendants imported, sold, offered for sale, and/or introduced into commerce in the United States equipment containing each of these engines, in violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. § 1068.101(a)(1).

89. 63 Uncertified Engines that Exceeded TPEM Exemption Allowances: From January 1, 2014 through December 31, 2017, Defendants manufactured, imported, sold, offered for sale, and/or introduced into commerce in the United States cranes containing nonroad compression-ignition engines with power between 130 and 560 kW that were not compliant with Tier 4f emission standards and were labeled as purportedly exempt from those standards under the TPEM.

90. Under the TPEM regulations, Defendants were allowed to qualify for a limited TPEM exemption based on a percent-of-production allowance or a small volume allowance, and to choose either option for any particular power category.

22

91. For the relevant power category here, engines with power between 130 and 560 kW, Defendants utilized the percent-of-production allowance.

92. Defendants exceeded their exempted engine allowance in 2014, 2015, 2016, and 2017 for this power category, by a total of 63 engines.

93. In addition, for 51 of these 63 engines, contained in cranes manufactured by Manitowoc Crane Group Germany GmbH and imported by Grove, Defendants failed to post an import bond, as required by 40 C.F.R. § 1039.626(a)(9).

94. Defendants' failure to comply with the bonding requirement when importing a purportedly TPEM-exempt engine under 40 C.F.R. § 1039.626 further disqualifies each such unbonded engine from TPEM-exempt status under 40 C.F.R. § 1039.625.

95. Each of these engines, which were in excess of the number permitted by the TPEM regulations, was neither covered by an EPA-issued certificate of conformity valid for the applicable model year, nor otherwise exempt from the Act's certification requirement.

96. From approximately December 2014 to December 2017, Defendants imported, sold, offered for sale, and/or introduced into commerce in the United States equipment containing each of these engines in violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. § 1068.101(a)(1).

97. 17 Additional Uncertified and Unbonded Non-Tier 4f Engines: Defendants also failed to post an import bond pursuant to 40 C.F.R. § 1039.626(a)(9), for 17 additional purportedly TPEM-exempt engines contained in cranes manufactured by Manitowoc Crane Group Germany GmbH and imported by Grove. These 17 engines are in addition to the 51 unbonded engines identified in Paragraph 93.

23

98. Defendants' failure to comply with the TPEM bonding requirement when importing a purportedly TPEM-exempt engine under 40 C.F.R. § 1039.626 disqualifies each such unbonded engine from TPEM-exempt status under 40 C.F.R. § 1039.625.

99. Each of these 17 additional engines was neither covered by an EPA-issued certificate of conformity valid for the applicable model year, nor otherwise exempt from the Act's certification requirement.

100. From approximately February 2014 to October 2014, Defendants imported, sold, offered for sale, and/or introduced into commerce in the United States equipment containing each of these engines in violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. § 1068.101(a)(1).

### ***Reporting Violations***

101. <u>Failure to Comply with Annual Reporting Requirements</u>: Defendants failed to submit complete and accurate annual TPEM reports in 2014, 2015, 2016, and 2017 pursuant to 40 C.F.R. § 1039.625(g)(2). Defendants' reports failed to include complete and accurate information concerning Defendants' actual U.S.-directed production volume and TPEM-exempted equipment, in violation of Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2), and 40 C.F.R. § 1068.101(a)(2).

102. <u>Failure to Comply with Import Declaration Requirements</u>: On at least 560 separate occasions since January 1, 2014, Defendants failed to complete and/or retain a complete and accurate EPA Declaration Form 3520-21 identifying imported equipment and CAA compliance status, as required under 40 C.F.R. § 1068.301(d).

103. These 560 occasions include at least 354 entries involving non-Tier 4f engines that lacked the required EPA Declaration Form 3520-21 indicating that the imported cranes were not

24

in compliance with the Act, and at least 206 entries involving Tier 4f engines that lacked the required EPA Declaration Form 3520-21. Defendants' failure to complete and/or or retain EPA Declaration Form 3520-21 as required for each of these entries violated Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2) and 40 C.F.R. § 1068.101(a)(2). *See* 40 C.F.R. § 1068.335(a).

### *Labeling Violations*

104. Fuel Inlet Labeling Violations: Defendants manufactured 53 cranes that lacked the "Ultra Low Sulfur Fuel Only" fuel inlet labeling required by 40 C.F.R. § 1039.135(e).

105. From approximately February 2014 to June 2017, Defendants imported, sold, offered for sale, and/or introduced into commerce in the United States each of these 53 unlabeled cranes in violation of Section 203(a)(4) of the Act, 42 U.S.C. § 7522(a)(4), and 40 C.F.R. § 1068.101(a)(1).

106. Military Exempt Labeling Violations: Grove manufactured four cranes that were exempt from "Ultra Low Sulfur Fuel Only" fuel inlet labeling requirements, but that lacked military exempt labels required by 40 C.F.R. § 1068.225(e).

107. From September 30, 2016 to July 7, 2017, Grove sold, offered for sale, and/or introduced into commerce in the United States each of these four unlabeled cranes in violation of Section 203(a)(4) of the Act, 42 U.S.C. §§ 7522(a)(4), and 40 C.F.R. § 1068.101(a)(1).

### FIRST CLAIM FOR RELIEF

**(Violations of Clean Air Act Section 203(a)(1) and
40 C.F.R. §§ 1037.601(a)(1) and 1068.101(a)(1):
59 Uncertified TMS500-2 Truck Cranes)**

108. Paragraphs 1 through 107 are realleged and incorporated by reference.

109. Defendants sold, offered for sale, introduced, or delivered for introduction into United States commerce (or caused any of the foregoing), 59 TMS500-2 truck cranes without meeting the Phase I GHG certification requirements of 40 C.F.R. Part 1037.

110. Pursuant to 42 U.S.C. § 7524(a), the sale, offering for sale, or introduction or delivery for introduction into United States commerce (or causing any of the foregoing), of each TMS500-2 truck crane that was not covered by a valid motor vehicle certificate of conformity nor otherwise exempt from the Act's certification requirements constitutes a separate violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. §§ 1037.601(a)(1) and 1068.101(a)(1).

111. The United States is entitled to injunctive relief as to each Defendant and Defendants are each liable for civil penalties of up to $57,617 per engine for each violation of the Act identified in the preceding paragraph, each of which occurred after November 2, 2015. 42 U.S.C. §§ 7523(a) and 7524(a); 40 C.F.R. §§ 19.4 and 1068.101(a)(1).

## SECOND CLAIM FOR RELIEF

**(Violations of Clean Air Act Section 203(a)(1) and 40 C.F.R. § 1068.101(a)(1): 392 Uncertified Nonroad Truck Cranes Equipped with Motor Vehicle Engines)**

112. Paragraphs 1 through 107 are realleged and incorporated by reference.

113. Defendants sold, offered for sale, introduced, or delivered for introduction into United States commerce (or caused any of the foregoing), 392 nonroad truck cranes that had been equipped with motor vehicle engines without meeting the requirements of 40 C.F.R. § 1039.605.

114. Pursuant to 42 U.S.C. § 7524(a), the sale, offering for sale, or introduction or delivery for introduction into United States commerce (or causing any of the foregoing), of each

26

nonroad truck crane that was not covered by a valid nonroad certificate of conformity nor otherwise exempt from the Act's certification requirements constitutes a separate violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. § 1068.101(a)(1).

115. The United States is entitled to injunctive relief as to each Defendant and Defendants are each liable for civil penalties of up to $37,500 per engine for each violation of the Act identified in the preceding paragraph occurring between January 1, 2014 and November 2, 2015, and up to $57,617 per engine for each violation occurring after November 2, 2015. 42 U.S.C. §§ 7523(a) and 7524(a); 40 C.F.R. §§ 19.4 and 1068.101(a)(1).

## THIRD CLAIM FOR RELIEF

### (Violations of Clean Air Act Section 203(a)(1) and 40 C.F.R. § 1068.101(a)(1): Three Cranes Containing Uncertified Tier 3 Export-Only Engines)

116. Paragraphs 1 through 107 are realleged and incorporated by reference.

117. Defendants sold, offered for sale, introduced, or delivered for introduction into United States commerce, or imported into the United States (or caused any of the foregoing), three nonroad cranes with Tier 3 engines that had been labeled as exempt from CAA certification requirements pursuant to the export-only provisions of 40 C.F.R. § 1068.230.

118. Pursuant to 42 U.S.C. § 7524(a), the sale, offering for sale, introduction or delivery for introduction into United States commerce, or importation into the United States (or causing any of the foregoing), of each nonroad crane containing a Tier 3 export-only engine that was not covered by a valid certificate of conformity nor otherwise exempt from the Act's certification requirements constitutes a separate violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. § 1068.101(a)(1).

119. The United States is entitled to injunctive relief as to each Defendant and Defendants are each liable for civil penalties of up to $37,500 per engine for each violation of the Act identified in the preceding paragraph occurring between January 1, 2014 and November 2, 2015, and up to $57,617 per engine for each violation occurring after November 2, 2015. 42 U.S.C. §§ 7523(a) and 7524(a); 40 C.F.R. §§ 19.4 and 1068.101(a)(1).

## FOURTH CLAIM FOR RELIEF

**(Violations of Clean Air Act Section 203(a)(1) and 40 C.F.R. § 1068.101(a)(1):
At Least 498 Uncertified Non-Tier 4f/Stockpiled Engines)**

120. Paragraphs 1 through 107 are realleged and incorporated by reference.

121. Defendants sold, offered for sale, introduced, or delivered for introduction into United States commerce, or imported into the United States (or caused any of the foregoing), nonroad cranes with at least 498 engines not certified to the applicable Tier 4f standards, that were not labeled as TPEM exempt, and that did not qualify as TPEM exempt.

122. Pursuant to 42 U.S.C. § 7524(a), the sale, offering for sale, introduction or delivery for introduction into United States commerce, or importation into the United States (or causing any of the foregoing), of each engine or nonroad crane utilizing such engine that was not covered by a valid certificate of conformity nor otherwise exempt from the Act's certification requirements constitutes a separate violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. § 1068.101(a)(1).

123. The United States is entitled to injunctive relief as to each Defendant and Defendants are each liable for civil penalties of up to $37,500 per engine for each violation of the Act identified in the preceding paragraph occurring between January 1, 2014 and November 2,

28

2015, and up to $57,617 per engine for each violation occurring after November 2, 2015. 42

U.S.C. §§ 7523(a) and 7524(a); 40 C.F.R. §§ 19.4 and 1068.101(a)(1).

## FIFTH CLAIM FOR RELIEF

### (Violations of Clean Air Act Section 203(a)(1) and 40 C.F.R. § 1068.101(a)(1): 63 Uncertified Engines in Excess of TPEM Allowance)

124. Paragraphs 1 through 107 are realleged and incorporated by reference.

125. Defendants sold, offered for sale, introduced, or delivered for introduction into United States commerce, or imported into the United States (or caused any of the foregoing), 63 nonroad cranes with engines not certified to the applicable Tier 4f standards that were labeled as purportedly exempt from those standards under the TPEM, but which exceeded Defendants' TPEM exemption allowance.

126. Pursuant to 42 U.S.C. § 7524(a), the sale, offering for sale, introduction or delivery for introduction into United States commerce, or importation into the United States (or causing any of the foregoing), of each engine or nonroad crane utilizing such engine that was not covered by a valid certificate of conformity nor otherwise exempt from the Act's certification requirements, and that exceeded the TPEM exemption allowance, constitutes a separate violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. § 1068.101(a)(1).

127. The United States is entitled to injunctive relief as to each Defendant and Defendants are each liable for civil penalties of up to $37,500 per engine for each violation of the Act identified in the preceding paragraph occurring between January 1, 2014 and November 2, 2015, and up to $57,617 per engine for each violation occurring after November 2, 2015. 42 U.S.C. §§ 7523(a) and 7524(a); 40 C.F.R. §§ 19.4 and 1068.101(a)(1).

29

## SIXTH CLAIM FOR RELIEF

**(Violations of Clean Air Act Section 203(a)(1) and 40 C.F.R. § 1068.101(a)(1):
17 Additional Uncertified and Unbonded Engines That Were Disqualified from TPEM)**

128. Paragraphs 1 through 107 are realleged and incorporated by reference.

129. Defendants imported or caused to be imported into the United States 68 uncertified nonroad engines without the bond required by 40 C.F.R. § 1039.626(a)(9), thus disqualifying the engines from the TPEM. Of these 68 engines, 51 were also, in any event, in excess of Defendants' TPEM exemption allowance as alleged in the Fifth Claim for Relief, leaving 17 where the only violation was that they were illegally imported without the required CAA bond.

130. Pursuant to 42 U.S.C. § 7524(a), the sale, offering for sale, introduction or delivery for introduction into United States commerce, or importation into the United States (or causing any of the foregoing), of each engine or nonroad crane utilizing such engine that was not certified to the applicable Tier 4 final standard and that did not meet TPEM bonding requirements, constitutes a separate violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and 40 C.F.R. § 1068.101(a)(1).

131. The United States is entitled to injunctive relief as to each Defendant and Defendants are each liable for civil penalties of up to $37,500 per engine for each violation of the Act identified in the preceding paragraph occurring between January 1, 2014 and November 2, 2015, and up to $57,617 per engine for each violation occurring after November 2, 2015. 42 U.S.C. §§ 7523(a) and 7524(a); 40 C.F.R. §§ 19.4 and 1068.101(a)(1).

30

## SEVENTH CLAIM FOR RELIEF

**(Violations of Clean Air Act Section 203(a)(2) and 40 C.F.R. § 1068.101(a)(2):
Inaccurate TPEM Annual Reports)**

132. Paragraphs 1 through 107 are realleged and incorporated by reference.

133. Defendants were required to file annual TPEM reports for calendar years 2014, 2015, 2016, and 2017, by March 31, 2015, March 31, 2016, March 31, 2017, and March 31, 2018, respectively, identifying the total count of units sold in the preceding year for each power category based on actual U.S.-directed production information, the percentages of U.S.-directed production that correspond to the number of units in each power category and the cumulative numbers and percentages of units for all the units that the manufacturer has sold pursuant to TPEM for each power category, and the manufacturer of such engines if different than previously reported, as provided in 40 C.F.R. § 1039.625(g)(2).

134. Defendants failed to accurately disclose the required information in annual TPEM reports in 2014, 2015, 2016, and 2017. Such information was reasonably required by EPA to determine whether Defendants had acted or were acting in compliance with the Act, pursuant to 42 U.S.C. § 7542, and the failure to provide complete and accurate information constitutes violations of Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2) and 40 C.F.R. § 1068.101(a)(2).

135. The United States is entitled to injunctive relief as to each Defendant and Defendants are each liable for civil penalties of up to $37,500 for each day Defendants were in violation of the reporting requirements identified in the preceding paragraph occurring between January 1, 2014 and November 2, 2015, and up to $57,617 per day after November 2, 2015. 42 U.S.C. § 7524(a); 40 C.F.R. §§ 19.4, 1068.101(a)(2).

31

## EIGHTH CLAIM FOR RELIEF

**(Violations of Section 203(a)(2) of the Act and 40 C.F.R. § 1068.101(a)(2):**
**560 TPEM Import Form Reporting Violations)**

136.  Paragraphs 1 through 107 are realleged and incorporated by reference.

137.  On at least 560 occasions between January 2014 and January 2018, Defendants imported nonroad cranes but failed to complete and/or retain the appropriate EPA Declaration Form 3520-21 as required under 40 C.F.R. § 1068.301(d).

138.  Each failure to properly complete the importation reporting requirements on EPA Declaration Form 3520-21 as required under 40 C.F.R. § 1068.301(d) is a violation of Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A), and 40 C.F.R. § 1068.101(a)(2).

139.   The United States is entitled to injunctive relief as to each Defendant and Defendants are each liable for civil penalties of up to $37,500 for each day Defendants were in violation of the reporting requirements identified in the preceding paragraph occurring between January 1, 2014 and November 2, 2015, and up to $57,617 per day after November 2, 2015. 42 U.S.C. § 7524(a); 40 C.F.R. §§ 19.4 and 1068.101(a)(2).

## NINTH CLAIM FOR RELIEF

**(Violations of Clean Air Act Section 203(a)(4) and 40 C.F.R. § 1068.101(a)(1):**
**53 Fuel Inlet Labeling Violations)**

140.  Paragraphs 1 through 107 are realleged and incorporated by reference.

141. Defendants sold, offered for sale, introduced, or delivered for introduction into United States commerce, or imported into the United States (or caused any of the foregoing), 53 nonroad cranes that lacked the "Ultra Low Sulfur Fuel Only" fuel inlet labeling required by 40 C.F.R. § 1039.135(e).

142. Pursuant to 42 U.S.C. § 7524(a), the sale, offering for sale, introduction or delivery for introduction into United States commerce, or importation into the United States (or causing any of the foregoing), of each mislabeled crane constitutes a separate violation of Section 203(a)(4) of the Act, 42 U.S.C. § 7522(a)(4), and 40 C.F.R. § 1068.101(a)(1).

143. The United States is entitled to injunctive relief as to each Defendant and Defendants are each liable for civil penalties of up to $37,500 for each violation of the Act identified in the preceding paragraph occurring between January 1, 2014 and November 2, 2015, and up to $57,617 for each violation occurring after November 2, 2015. 42 U.S.C. §§ 7523(a) and 7524(a); 40 C.F.R. §§ 19.4 and 1068.101(a)(1).

## TENTH CLAIM FOR RELIEF

### (Violations of Clean Air Act Section 203(a)(4) and 40 C.F.R. § 1068.101(a)(1): Four Military Exempt Labeling Violations)

144. Paragraphs 1 through 107 are realleged and incorporated by reference.

145. Defendants sold, offered for sale, introduced, or delivered for introduction into United States commerce (or caused any of the foregoing), four nonroad cranes that lacked the military exempt labeling required by 40 C.F.R. § 1068.225(e).

146. Pursuant to 42 U.S.C. § 7524(a), the sale, offering for sale, introduction or delivery for introduction into United States commerce (or causing any of the foregoing), of each unlabeled crane constitutes a separate violation of Section 203(a)(4) of the Act, 42 U.S.C. § 7522(a)(4), and 40 C.F.R. § 1068.101(a)(1).

147. The United States is entitled to injunctive relief as to each Defendant and Defendants are each liable for civil penalties of up to $57,617 per engine for each violation of the

33

Act identified in the preceding paragraph, each of which occurred after November 2, 2015. 42

U.S.C. §§ 7523(a) and 7524(a); 40 C.F.R. §§ 19.4 and 1068.101(a)(1).

## **PRAYER FOR RELIEF**

Wherefore, the United States requests that this Court:

a.  Enjoin Defendants from further violations of the Act and order them to take all steps necessary to achieve compliance and remedy the violations identified above, including through mitigation of the excess emission that have resulted from the introduction into commerce of the uncertified engines and equipment;

b.  Assess civil penalties against Defendants for their violations as provided for in the Act;

c.  Award the United States its costs in this action; and

d.  Grant such other relief as this Court deems just and proper.


Respectfully Submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

 s/Jason A. Dunn
JASON A. DUNN
VA Bar #42730
Assistant Section Chief
Environmental Enforcement Section
Environment & Natural Resources Division.
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
202-514-1111
Jason.Dunn@usdoj.gov

34

OF COUNSEL:

Jennifer M. Abramson
Senior Assistant Regional Counsel
Humane Zia
Senior Assistant Regional Counsel
USEPA Region III (3RC30)
1650 Arch Street
Philadelphia, PA 19103